# Third District Court of Appeal
## State of Florida

Opinion filed November 12, 2025.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D24-1648
Lower Tribunal No. B24-12400
_____


**Delan Wight,**
Appellant,

vs.

**City of Miami Beach,**
Appellee.


An Appeal from the County Court for Miami-Dade County, Ritamaria Cuervo, Judge.

Carlos J. Martinez, Public Defender, and Amy Weber, Assistant Public Defender, for appellant.

James Uthmeier, Attorney General, and Ivy R. Ginsberg, Senior Assistant Attorney General; Ricardo J. Dopico, City Attorney, and Robert F. Rosenwald, Jr., Chief Deputy City Attorney, for appellee.


Before LOGUE, LINDSEY, and GOODEN, JJ.

LOGUE, J.

Delan Wight appeals the trial court's finding that he violated Miami Beach Ordinance 82-2, which prohibits a person from entering or remaining on the beach during certain hours. He contends the City of Miami Beach failed to prove mens rea, which he contends is a required element of a violation of the ordinance. We decide that the ordinance has no such requirement and therefore affirm.

## Background

The City of Miami Beach charged Wight with violating Miami Beach Ordinance 82-2, which prohibits a person from being or remaining in a public park, beach, or golf course during certain hours. Ordinance 82-2 provides:

> Sec. 82-2. - Closing public parks, beaches, golf courses during certain hours.
>
> (a) No person shall be or remain in any part of any public park, beach or golf course that is fenced in or provided with gates between the closing of the gates at night and their reopening on the following day; nor shall any person be or remain in any public park or golf course not fenced in or provide with gates, between the hours of 12:00 midnight and 5:00 a.m. on the following day; <u>nor shall any person be or remain in any public beach not fenced in or provided with gates, between the hours of 10:00 p.m. and 5:00 a.m. on the following day</u>; except that persons may pass through a public park without stopping, on the most direct walk or driveway leading from their point of entrance to the exit nearest to their point of destination.

City of Miami Beach, Fla., Code § 82.2 (emphasis added).

The matter proceeded to a bench trial. The Assistant Miami Beach City Attorney called as a witness Miami Beach police officer Juan Zapata. Officer Zapata testified that on June 6, 2024, around 11:00 p.m., he and Officer Blandon were walking on the beach for the purpose of clearing the beach of people trespassing after hours. While doing so, he came in contact with Wight who appeared to be sleeping on a beach chair with a T-shirt on his back and a pillow. The interaction was captured on Officer Zapata's body camera, which showed it was 11:08 p.m. The footage was introduced into evidence and then played. The footage reflects that when Officer Blandon asked Wight how he was doing, Wight explained that he had "just dozed off." Officer Blandon informed Wight that he cannot be on the beach after 10:00 p.m. Wight then asked him the time, and Officer Blandon told Wight it was 11:10 p.m.

Officer Zapata also testified that the beach was not open when they encountered Wight because the beach closes from 10:00 p.m. and 5:00 a.m. on the following day. Further, every entrance to the beach has signs indicating the hours the beach is closed. Officer Zapata also testified Wight did not tell him that he was somehow unwillingly on the beach.

The City then rested. The defense moved for the first judgment of

3

acquittal, arguing that the City failed to establish a prima facie case against Wight for violating Ordinance 82-2. More specifically, Wight's counsel argued that mens rea should be read into the ordinance, and the failure of the ordinance to mention criminal intent is not interpreted as dispensing with such a requirement. Further, Wight's counsel argued the City presented no evidence that Wight saw or read the signs or had knowledge of the signs. The trial court denied the defense's first motion for judgment of acquittal.

The defense then rested and moved for its second judgment of acquittal as argued during the first motion. Following closing arguments, the trial court informed the parties that it would rule on the motion within a few days. At a subsequent hearing, the trial court informed the parties that it was denying the defense's second motion for judgment of acquittal. The trial court found Wight guilty of violating Ordinance 82-2, but withheld adjudication and ordered him to pay court costs. Wight's timely appeal followed.

## Standard of Review

Appellate courts review the trial court's determination of the elements of a criminal offense de novo. D.J. v. State, 67 So. 3d 1029, 1032 (Fla. 2011). "In reviewing a motion for judgment of acquittal, a de novo standard of review applies." Pagan v. State, 830 So. 2d 792, 803 (Fla. 2002). When doing so, this Court must affirm if the conviction is supported by competent, substantial

4

evidence. Perdomo v. State, 336 So. 3d 767, 768 (Fla. 3d DCA 2021).

**Analysis**

Wight argues that Ordinance 82-2 is silent on the element of mens rea, and, therefore, a requirement of mens rea should be read into the ordinance. In support, Wight cites to State v. Giorgetti, 868 So. 2d 512 (Fla. 2004), which states:

> [B]ecause of the strength of the traditional rule that requires mens rea, offenses that require no mens rea are generally disfavored. . . . In other words, the [United States Supreme Court] has virtually created a presumption in favor of a guilty knowledge element absent an express provision to the contrary.

Id. at 515. Thus, Wight asserts that mens rea is a necessary element of the offense set forth in Ordinance 82-2 and, because the City failed to prove he knowingly or willfully engaged in the act prohibited by the ordinance, the trial court erred by denying his motion for judgment of acquittal.

We are not persuaded. The ordinance at issue involves a "public welfare offense," and therefore, does not require proof of mens rea. In Giorgetti, the Florida Supreme Court recognized that "the [United States] Supreme Court has determined that a certain class of 'public welfare offenses' do not require intent." Giorgetti, 868 So. 2d at 518 (citing Morissette v. United States, 342 U.S. 246, 255-56 (1952)).

In Morissette, the United States Supreme Court discussed "public

5

welfare offenses," which do not usually require proof of mens rea. In doing so, the Court stated:

> Many of these offenses are not in the nature of positive aggressions or invasions, with which the common law so often dealt, but are in the nature of neglect where the law requires care, or inaction where it imposes a duty. Many violations of such regulations result in no direct or immediate injury to person or property but merely create the danger or probability of it which the law seeks to minimize. . . . Hence, legislation applicable to such offenses, as a matter of policy, does not specify intent as a necessary element. . . . Also, penalties commonly are relatively small, and conviction does no grave damage to an offender's reputation. Under such considerations, courts have turned to construing statutes and regulations which make no mention of intent as dispensing with it and holding that the guilty act alone makes out the crime.

Id. at 255-56.

Here, the Miami Beach ordinance, which prohibits a person from being or remaining in a public beach during certain hours, is a "public welfare offense." Being or remaining on the beach when it is closed is "not in the nature of positive aggressions or invasions," and a violation of the ordinance "result[s] in no direct or immediate injury to person or property." Id. Moreover, the penalty for violating the ordinance is "relatively small."[1] Id. at 256. Thus,

---

[1] A violation of Miami Beach Ordinance 82-2 "shall be punished by a fine not exceeding $500.00 or by imprisonment for a term not exceeding 60 days, or by both such fine and imprisonment." Miami Beach, Fla., Miami Beach City

6

as the ordinance is a "public welfare offense," mens rea is not an element of the offense. See Bridon v. State, 407 So. 3d 590, 590 (Fla. 3d DCA 2025) (quoting Morissette, 342 U.S. at 255-56, for the proposition that a certain class of "public welfare offenses" do not require intent).

Affirmed.

---

Code § 1-14 (2024). In addition, "the trial court in its discretion may, in any case (including cases when adjudication is withheld), place a defendant on probation in accordance with F.S. Ch. 948." Id.